UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MELISSA ANN TAYLOR,

      Plaintiff,

v.                                Case No:   6:15-cv-713-Orl-28TBS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## REPORT AND RECOMMENDATION

Plaintiff Melissa Ann Taylor brings this action for judicial review of a final decision of Defendant, the Commissioner of the Social Security Administration denying her applications for a period of disability, disability insurance benefits, and supplemental security income.   Upon a review of the administrative record and the joint memoranda submitted by the parties, and for the reasons that follow, I respectfully recommend that the Commissioner's final decision be **AFFIRMED**.

### I. Background

Plaintiff filed an application for benefits on October 3, 2007, alleging that she has been disabled since May 21, 2007 (Tr. 150, 531-33).   Her claims were denied initially and on reconsideration, and she requested a *de novo* hearing before an administrative law judge ("ALJ").   The hearing was held on May 19, 2010, at which time Plaintiff, who was represented by counsel, appeared and testified (Tr. 129-44).   Following the hearing, the ALJ sent interrogatories to Erik C. Walker, M.D., and Raul Rodas, M.D., asking about Plaintiff's smoking, weight, and the impact of each on her health (Tr. 306-36, 1183-92). The ALJ held a second hearing on November 18, 2010, at which Plaintiff, represented by

counsel, appeared and testified, as did medical expert, Dr. Charles I. Hancock (Tr. 106-28).   In a decision dated February 2, 2011, the ALJ concluded that Plaintiff was not disabled from May 21, 2007, through the date of the decision (Tr. 150-61).   Plaintiff asked the Appeals Council to review the decision, and on August 27, 2012, the Appeals Council vacated the February 2, 2011 decision and remanded the case for further consideration (Tr. 227-31).   While this proceeding was ongoing, Plaintiff filed a new claim for disability insurance benefits and supplemental security income (Tr. 231).   The Appeals Council associated the claims and directed the ALJ to issue a new decision on both claims (Id.).

A third administrative hearing was held on February 3, 2014.   Plaintiff, represented by counsel, appeared and testified, as did a vocational expert and a medical expert (Tr. 65-95).   The ALJ left the record open for 10 days to receive new medical evidence and a post hearing brief (Tr. 95).   A fourth administrative hearing was held on September 19, 2014, at which Plaintiff, represented by counsel, appeared and testified, as did a vocational expert (Tr. 53-64).   In a decision dated October 24, 2014, the ALJ concluded that Plaintiff was not disabled from May 21, 2007, through the date of the decision (Tr. 24-40).   That decision became the Commissioner's final decision when the Appeals Council declined review on March 31, 2015 (Tr. 1-3).

Plaintiff was 45 years old on the date of the ALJ's decision (Tr. 40, 531).   She has at least a high school education, is able to communicate in English, and has past relevant work as a medical assistant, unit secretary, and cardiac monitor (Tr. 38-39).   Plaintiff was last insured for disability insurance purposes on December 31, 2012 (Tr. 27).

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-

step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).   Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004).   The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.   Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability date (Tr. 27).   The ALJ found that Plaintiff's severe impairments consist of herniated disc syndrome status post lumbar laminectomy, history of ventral hernias, history of bowl obstructions, irritable bowel syndrome, degenerative joint disease of the right knee, tobacco abuse, and obesity (Id.).   The ALJ concluded that Plaintiff's impairments neither meet nor equal a listed impairment and leave Plaintiff with the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she would need a sit/stand option every 30 minutes (sit for 30 minutes and then stand for a few minutes, every 30 minutes)."   (Tr. 30).   The ALJ found that this RFC does not preclude the performance of Plaintiff's past relevant work as a medical assistant, unit secretary, or cardiac monitor (Tr. 38-39).   The ALJ also relied on the testimony of the vocational expert to find, alternatively, that Plaintiff is able to perform a significant number of jobs in the national economy, including such representative occupations as warehouse checker, assembler-small parts, and ticket

seller (Tr. 39-40).   Based on these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 21, 2007, through the date of the ALJ's decision (Tr. 40).

## III. Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence.   Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla but less than a preponderance.   It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion."   Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]"   Id.   "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

Dr. Erik C. Walker is a family medical physician who has been Plaintiff's primary

care doctor for more than 20 years (Tr. 63; Doc. 10).  Since 1988, Dr. Walker has treated

Plaintiff for a variety of ailments including chronic abdominal pain, irritable bowel

syndrome, low back pain, knee pain, and mitral valve leak (Tr. 1185).  On December 15,

2008, Dr. Walker opined that Plaintiff "is disabled from her multitude of illnesses."  (Tr.

1131).  On July 6, 2009, he wrote that Plaintiff "is still disabled.  I do not think there is

any way either emotionally or physically she can handle even the lightest amount of

work."  (Tr. 1130).  On March 15, 2010, he said Plaintiff "is 100% totally disabled and

will be for life."  (Tr. 1161).  Dr. Walker offered a more lengthy opinion on November 29,

2010:

> The patient has significant limitations in her work career.  She
> can only sit for approximately 15 minutes without numbness of
> her legs without moving and she does need to walk around for
> several minutes.  The patient cannot stand more than five
> minutes without severe pain in her back.  She can do virtually
> no walking with any persistent nature.  The patient has very
> poor lifting and carrying capacity due to her pain.  She can lift
> less than 10 lbs.  The patient's pain is persistent and
> constant.  She is on multiple pain medicines plus
> psychotropic medicines.  She does have significant
> depression that would significantly interfere with her
> concentration and ability to handle work stressors. …
>
> I do think that these problems are interrelated and are
> connected and she has virtually no chance of recovery.  I do
> think she is permanently disabled.  I do believe that disability
> is 100%.

(Tr. 1193).  See also Tr. 1561 (November 29, 2010 note: "We will bump up her pain

medicine.  We will write another letter to her attorney stating that we do feel she is

disabled.").

The medical opinion of a treating provider must be given controlling weight if that

opinion is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques" and is "not inconsistent with the other substantial evidence in [the] case

record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).   The ALJ must give the medical

opinion of a treating provider "substantial or considerable weight" unless "good cause" is

shown to the contrary.   Winschel, 631 F.3d at 1179 (quoting Lewis v. Callahan, 125 F.3d

1436, 1440 (11th Cir. 1997)).   "Good cause exists 'when the: (1) treating physician's

opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or

(3) treating physician's opinion was conclusory or inconsistent with the doctor's own

medical records.'"   Id. (quoting Phillips, 357 F.3d at 1241).   Even if the opinion of a

treating provider is not entitled to controlling weight the ALJ is still required to evaluate the

opinion, considering such factors as (1) length of the treatment relationship and the

frequency of examination; (2) the nature and extent of the treatment relationship; (3) the

medical evidence and explanation supporting the opinion; (4) consistency with the record

as a whole; (5) specialization in the pertinent medical issues; and (6) other factors that

tend to support or contradict the opinion.   20 C.F.R. §§ 404.1527(c)(2)-(6),

416.927(c)(2)-(6); Weekley v. Comm'r of Soc. Sec., 486 F. App'x 806, 808 (11th Cir.

2012); Logreco v. Astrue, No. 5:07-CV-80-OC-10GRJ, 2008 WL 783593, at *10 (M.D.

Fla. Mar. 20, 2008).   The ALJ "must specify what weight is given to a treating physician's

opinion and any reason for giving it no weight, and failure to do so is reversible error."

MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986) (citing Broughton v. Heckler,

776 F.2d 960, 961-62 (11th Cir. 1985)).   The special treatment afforded the opinions of

treating providers recognizes that "'these sources are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of [the claimant's]

medical impairment(s).'"   Reynolds-Buckley v. Comm'r of Soc. Sec., 457 F. App'x 862,

864 (11th Cir. 2012) (quoting 20 C.F.R. § 404.1527(d)(2)).

The ALJ provided the following discussion of Dr. Walker's treatment notes and opinions:

> The record reflects that the claimant reported to the emergency room following an automobile accident on May 21, 2007, with reports of abdomen and mid- and low back pain. The claimant's family care physician, Erik Walker, M.D., ordered a lumbar MRI, which showed a central disc protrusion at L4-5 producing mild impression on the ventral thecal sac and bilateral facet joint arthropathy producing mild to moderate proximal foraminal stenosis at L5S1 (Exhibit 1F/25). Dr. Walker referred the claimant for evaluation with neurosurgeon Raul Rodas, M.D., who recommended and performed a discectomy at L4-5 in September 2007. …
>
> …
>
> The next record of treatment for any of her severe impairments is from December 2008, when the claimant returned to Dr. Walker and reported chronic abdominal pain. On examination, Dr. Walker noted that the claimant's abdomen was diffusely tender without rebound.   He also noted that the claimant reported "a great deal of low back pain but with no neurological signs."   The claimant next followed up in July 2009 with Dr. Walker, and although his "objective" section indicates that her "back shows her to have a great deal of pain" and "she does have sciatica down both legs," his records do not indicate that he actually performed any testing to confirm her reported pain.   The claimant returned to Dr. Walker in November 2009 and reported that she had been cutting down her pain medicine (Exhibit 20F).
>
> …
>
> The claimant continued to treat with Dr. Walker, among others, for low back pain from 2010 to present.   Dr. Walker noted the claimant required an increase in her dosage of pain medication and opined that she is disabled.   (Exhibit 42F)
>
> …
>
> In 2012, the claimant presented to Dr. Walker in a wheelchair and complained of back pain, amongst other things. However, there is no indication a wheelchair was warranted or that she continued to use it.   She did not mention the use of a wheel chair at the hearing.   (Exhibit 47F)   She was involved in a second motor vehicle accident in November 2012.

However, all findings were normal with the exception of moderate volume effusion and mild DJD of the right knee. (Exhibits 45F; 48F)

…

She continued narcotic therapy as prescribed by Dr. Walker in 2012 and 2013.   (Exhibits 42F; 43F)   A lumbar spine MRI from October 2013 revealed a right L4-5 fusion; minimal DDD; and a L3-4 bulge slightly more prominent than the prior study. A cervical spine x-ray was negative, and a cervical spine MRI revealed minimal C5-6 central canal stenosis that was stable. (Exhibit 58F)   Dr. Walker noted the claimant had normal gait. (Exhibit 55F) …

…

The claimant's treating family care doctor, Dr. Walker, submitted his opinion that the claimant is "100% totally disabled" (Exhibits 22F; 26F.)   Social Security Ruling 96-2p provides that controlling weight must be given to a treating source's medical opinion if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is "not inconsistent" with the other substantial evidence in the case record.    The undersigned notes also that statements that a claimant is disabled or unable to work are issues reserved to the Commissioner; however, such opinions must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence (20 CFR 404.1527(d)(2); SSR 96-Sp.)   The undersigned gives little weight to Dr. Walker's opinion, as his treatment records do not suggest that he performed any objective testing or recorded any objective clinical findings to support his conclusion that the claimant is disabled, and the other objective evidence of record is not consistent with his opinion, as detailed above.   Dr. Walker's opinion appears to be based primarily on the claimant's subjective reports rather than on objective evidence.   In addition, his opinion was in 2010, which is four years out of date.

…

It is also noted that Dr. Hancock, the impartial medical expert, testified that he disagrees with the limitations set forth by Dr. Walker and Dr. Rodas, and he stated that these limitations were not supported by the record evidence.    Dr. Hancock testified that, in his opinion, the claimant would be capable of

> performing light work with no climbing of ladders, ropes, or scaffolds, and occasionally climbing stairs or ramps, stooping, crouching, balancing, and kneeling.   He also stated that he would provide the claimant the ability to get up and move around as necessary.

(Tr. 32-37).

Plaintiff categorizes Dr. Walker's opinions as "opinions of disability," and cites in particular, his opinion that she "was 'disabled' from a 'multitude of illnesses,'" "was 'disabled' and could not 'handle even the lightest amount of work,'" "was '100% disabled and will be for life,'" and "again stated she was 'permanently disabled' with a 100% disability."  (Doc. 17, pp. 24-25).   Plaintiff complains that the ALJ erred in evaluating Dr. Walker's medical opinions by failing to evaluate the appropriate factors, failing to weigh all of Dr. Walker's opinions, and failing to acknowledge that Dr. Walker reviewed objective findings from other doctors (Id. at pp. 24-27).

Dr. Walker's opinion that Plaintiff is totally disabled is not binding on the ALJ. Whether Plaintiff is disabled or unable to work is a matter reserved to the Commissioner for determination.   Denomme v. Comm'r, Soc. Sec. Admin., 518 F. App'x 875, 878 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1)).   Therefore, the ALJ was not required to weigh Dr. Walker's opinion that Plaintiff is totally disabled, and the ALJ was not required to give that opinion controlling or significant weight.   See 20 C.F.R. § 404.1527(d)(3); Hutchinson v. Astrue, 408 F. App'x 324, 327 (11th Cir. 2011) ("Opinions from medical sources on some issues are 'not medical opinions' because they are reserved for the Commissioner as 'administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability.'") (quoting 20 C.F.R. § 404.1527(e)); Stokes v. Colvin, No. 3:14-CV-350-J-MCR, 2015 WL 1754603, at *5 (M.D. Fla. Apr. 17, 2015) ("Further, Dr. Harper-Nimock's opinions regarding Plaintiff's RFC were

not medical opinions because they addressed issues reserved to the Commissioner.")
(citing 20 C.F.R. § 404.1527(d)(2)); <u>Winschel</u>, 631 F.3d at 1179 ("[T]he ALJ must state
with particularity the weight given to different *medical opinions* and the reasons therefor.")
(emphasis added).   Still, the ALJ discussed and weighed Dr. Walker's 2010 opinion and
cited the records containing his opinions from 2008 and 2009 that Plaintiff was "disabled."
(Tr. 33, 37).

Plaintiff argues that remand is required because the ALJ failed to state what weight
he assigned Dr. Walker's 2008 and 2009 opinions.   Those opinions of disability are
conclusory and duplicative of Dr. Walker's 2010 opinions which the ALJ did discuss.
Therefore, the ALJ's failure to assign a specific weight to the doctor's 2008 and 2009
opinions did not affect the result in the case and was at worst, harmless error.   <u>See
Tillman v. Comm'r, Soc. Sec. Admin.</u>, 559 F. App'x 975 (11th Cir. 2014); <u>Hutchinson</u>, 408
F. App'x at 327.

The ALJ gave Dr. Walker's 2010 opinions little weight.   The ALJ discounted Dr.
Walker's opinions in part because his treatment records do not reflect that he performed
any objective testing or recorded any objective clinical findings to support his conclusion
that Plaintiff is disabled.   The ALJ also observed that Dr. Walker's opinions are not
consistent with the objective evidence in the record.   The ALJ noted that Plaintiff
recovered from her September 2007 surgery and has had conservative treatment and
"largely benign" physical examinations ever since (Tr. 35).   The ALJ said Dr. Walker's
opinions were "four years out of date" and appeared "to be based primarily on the
claimant's subjective reports rather than on objective evidence."   (Tr. 37).   Plaintiff
argues that "[t]here is no evidentiary basis for the ALJ's conclusion that Dr. Walker's
opinions 'appear' to be based primarily on the claimant's subjective reports …."   (Doc. 17,

p. 27).   But, the ALJ's conclusion is consistent with his findings that Dr. Walker's opinions

lacked objective support in his own treatment records and the record as a whole.   See

Tr. 33 ("The claimant next followed up in July 2009 with Dr. Walker, and although his

'objective' section indicates that her 'back shows her to have a great deal of pain' and

'she does have sciatica down both legs,' his records do not indicate that he actually

performed any testing to confirm her reported pain.").

Plaintiff does not dispute the ALJ's finding that Dr. Walker's treatment records fail

to document objective testing to support his disability conclusion.   But Plaintiff argues,

Dr. Walker's opinions are supported by his review of Plaintiff's May 23, 2007 lumbar MRI,

Dr. Raul A. Rodas' evaluations and L4-5 lumbar fusion surgery from 2007, a note from

February 2008 that Plaintiff "still had persistent low back pain from secondary sites with

DDD and facet arthropathies," and Dr. Antonio Certo's July 19, 2011 opinion that Plaintiff

was "clearly disabled."   (Doc. 17, pp. 26-27).

The results of the May 23, 2007 MRI were,

> Mild lumbar spondylosis.   Central posterior disc protrusion at
> L4-5, producing mild impression on the ventral thecal sac.
> Mild facet joint arthropathy.
>
> L5-S1 with bilateral facet joint arthropaty, producing mild to
> moderate proximal foraminal stenosis, greater in the left than
> the right.

(Tr. 869-70).   Plaintiff has failed to show how these essentially mild findings support the

conclusion that she is totally disabled.

Dr. Rodas evaluated Plaintiff on August 21, 2007, in preparation for a surgical

procedure (Tr. 858).   He wrote "[s]he does have a complex chronic pain issue that will

need to be dealt with separately in the _____ of this procedure."   (Id.).   After the surgery,

Dr. Rodas reported,

> Her incision is well healed.   Subsequently her stitches were
> removed today.   She manifests residual discomfort in the
> right thigh with paresthesias.   Overall her low back pain has
> improved and continues to so on a slow but progressive basis.

(Tr. 860).   Then, following a February 25, 2008 clinical visit, Dr. Rodas said,

> The patient is in an unfortunate medical socioeconomic
> situation in that although she has improved from her
> procedure, she continues to have persistent low back pain
> from secondary sites of her degenerative disease and facet
> arthropathies.
>
> …
>
> I will continue to work with the patient from a support
> standpoint.   She is in no need at this point of acute
> neurosurgical intervention.   Chronic pain management and
> social services is a requisite.

(Tr. 1073).   Plaintiff has not explained how Dr. Rodas' impressions support a finding of total disability.   Additionally, the ALJ determined that Dr. Rodas' opinion was entitled to "little weight, to the extent it is more restrictive than the adopted [RFC]," and Plaintiff has not challenged that determination (Tr. 37).

In his July 19, 2011 report, Dr. Certo of Pain Medicine Specialists, Inc., stated that Plaintiff "is clearly disabled from all type [sic] of work at the current time."   (Tr. 1445).   But, this opinion is no more influential than Dr. Walker's opinions that Plaintiff was totally disabled.

For these reasons, I find that the ALJ properly evaluated and weighed Dr. Walker's medical opinions.   I also find that the findings and opinions recorded by Dr. Rodas and Dr. Certo are not substantial evidence to support Dr. Walker's ultimate conclusion that Plaintiff is disabled.

Next, Plaintiff argues that the ALJ erred in failing to explain the weight assigned to the opinions of Dr. Certo and Dr. Marc Sharfman, M.D. (Doc. 17, pp. 27-28).   When

Plaintiff saw Dr. Certo she was complaining of back pain secondary to an automobile accident (Tr. 1574).   Plaintiff treated with Dr. Sharfman in November and December 2013 after she was in a third automobile accident.   On December 12, 2013, Dr. Sharfman opined that Plaintiff's work status was "[t]emporary total disability" (Tr. 1776-77).   The ALJ acknowledged both opinions without stating what weight he assigned them:

> She then presented to Dr. Certo for treatment recommendations.   He suggested an evaluation for a second surgical opinion to see whether a definitive neurosurgical procedure could be carried out to give her further benefit, along with continued usage of Hydrocodone as necessary to help placate symptomatology to some degree.   He informed the claimant that he had absolutely nothing to offer her in terms of therapy for the type of problem she has.   Dr. Certo recommend that the claimant not return to employment in view of her situation and that she is clearly disabled from all type of work at the current time.   (Exhibit 33F)   Again, in light of the relatively benign findings, Dr. Certo's opinions were likely largely based on the claimant's subjective complaints as he could not even offer her any treatment.
>
> …
>
> She presented to Dr. Sharfman, a neurologist, who noted the claimant needed a walker and was temporarily totally disabled due to her headaches and low back pain and mid back pain since her August 2013 motor vehicle accident.   He recommended physical therapy, though there is no indication the claimant attended, for the claimant's pain that was facetogenic in nature.   Her reflexes and strength were noted as normal.   However, she could not heel walk due to balance issues.   (Exhibits 56F; 58F; 60F)

(Tr. 34).

Plaintiff asks that the case be remanded so that the ALJ can specify exactly what weight he assigned these opinions.   I find this to be an unnecessary exercise because it is evident from the ALJ's decision that no weight was given to either doctors' opinion. Both opinions are duplicative of Dr. Walker's opinions which the ALJ gave little weight.

Perhaps more importantly, Dr. Certo and Dr. Sharfman opined that Plaintiff is disabled. As discussed above, that is a matter reserved to the Commissioner.   Such opinions do not have to be weighed (although they must be considered), and are not entitled to controlling or significant weight.   The ALJ discussed the medical evidence, including the records and opinions of Drs. Certo and Sharfman, and explained why the objective evidence did not support disability or greater limitations than those found in the RFC assessment.   The assignment of any weight to Dr. Certo's and Dr. Sharfman's opinions would be contrary to the ALJ's finding of no disability.   Under these circumstances, the ALJ's failure to state the weight he assigned the doctors' opinions is not reversible error.

Plaintiff also alleges that the ALJ "improperly accorded 'significant weight'" to the opinion of Dr. Hancock, the medical expert who testified at the November 18, 2010 hearing, "because Dr. Hancock testified … that he was unqualified to testify regarding the claimant's gastrointestinal and psychiatric impairments."   (Doc. 17, p. 28 (emphasis omitted)).   According to Plaintiff, Dr. Hancock's testimony was "based solely on Plaintiff's musculoskeletal impairments and not on the substantial evidence of record."   (Doc. 17, p. 28).

Dr. Hancock is a board certified orthopedist who has never seen or treated Plaintiff (Tr. 106-28, 364).   Following a review of the evidence, Dr. Hancock testified that Plaintiff was capable of performing a reduced range of light activity (Tr. 109-10).   The ALJ found that Dr. Hancock's opinion was supported by the medical record and was consistent with the record as a whole (Tr. 37).   When Dr. Hancock was asked what medical conditions Plaintiff had during the relevant period he testified about Plaintiff's impairments "[f]rom a musculoskeletal standpoint" and noted that he was not qualified to testify on Plaintiff's surgical procedures on the bowel or psychiatric conditions (Tr. 108-09).   Dr. Hancock

nevertheless testified about Plaintiff's work limitations from her impairments, including

those resulting from "the other problems that she has, especially with the bowel where

part of it has been resected."   (Tr. 109).

During the hearing the ALJ said he "wanted to get a medical expert opinion in this

case from an orthopedist."   (Tr. 108).   The ALJ assigned "significant weight" to a portion

of Dr. Hancock's opinion on the basis that it is "consistent with the objective findings of

record and is supported by the record as a whole."   (Tr. 37).   Plaintiff's only challenge to

the ALJ's reliance on Dr. Hancock's testimony is based on his specialization as an

orthopedist and his indication that he was unqualified to testify about certain medical

conditions.   Plaintiff has not cited any authority in support of her argument that a medical

expert has to be specialized in all areas to discuss all of a claimant's impairments.   To

the contrary, the regulations provide that when weighing a medical opinion, including

those from medical experts, more weight is generally given "to the opinion of a specialist

about medical issues related to his or her area of specialty than to the opinion of a source

who is not a specialist."   20 C.F.R. §§ 404.1527(c)(5), (e).   Accordingly, I find that the

ALJ did not err in giving significant weight to Dr. Hancock's opinions.

Finally, Plaintiff argues that the ALJ erred in finding her testimony only partially

credible (Doc. 17, pp. 40-46).   To serve as a basis for disability, a claimant's subjective

complaints must be supported by evidence of an underlying medical condition.   Wilson v.

Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221,

1223 (11th Cir. 1991)).   If they are, the ALJ must determine (a) whether there is

"objective medical evidence confirming the severity of the alleged pain; or (b) that the

objectively determined medical condition can reasonably be expected to give rise to the

claimed pain."   Id. (citing Holt, 921 F.2d at 1223).   In evaluating a claimant's credibility,

the ALJ should consider the objective medical evidence and the following factors:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7P, 1996 WL 374186 (July 2, 1996).   See also 20 C.F.R. §§ 404.1529(c)(1),

(c)(3); SSR 16-3p, 2016 WL 1119029, at *7.

"[C]redibility determinations are the province of the ALJ."   Moore v. Barnhart, 405

F.3d 1208, 1212 (11th Cir. 2005) (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir.

1984)).   However, "[i]f the ALJ discredits subjective testimony, he must articulate explicit

and adequate reasons for doing so."   Wilson, 284 F.3d 1225 (citing Hale v. Bowen, 831

F.2d 1007, 1011 (11th Cir. 1987)).   "Failure to articulate the reasons for discrediting

subjective testimony requires, as a matter of law, that the testimony be accepted as true."

Id. (citing Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988)).

The ALJ summarized Plaintiff's testimony and subjective complaints and found

that Plaintiff's "medically determinable impairments could reasonably be expected to

cause the alleged symptoms," but that her "statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely credible."   (Tr. 32).

The ALJ also summarized the medical evidence then determined that the "objective

findings of record and the claimant's treatment history do not support the degree of

physical limitation the claimant alleges."   (Tr. 32-35).   The ALJ explained:

> Since recovering from her September 2007 surgery, the
> claimant's physical examinations have been largely benign.
> Although there has been some documentation of positive
> straight leg raising, that documentation did not specify the
> type of pain elicited, so it is not clear that the claimant's pain is
> neurological.     Moreover, the consultative examiner, an
> orthopedist, noted that the claimant did not have any
> neurological deficits on examination.   It is also noted that the
> claimant has consistently had normal motor strength, no
> edema, and normal sensation of the lower extremities despite
> her alleged symptoms.
>
> Further, the claimant has been treated conservatively since
> her surgery.   Since recovering from her surgery, the only
> treatment the claimant has received has been medication
> prescribed by her family physician until her recent visit with a
> pain management physician.   No doctor has recommended
> any further treatment modalities such as injections or physical
> therapy, and her treating neurosurgeon stated that further
> surgery was not needed.   The use of a stimulator was
> mentioned but not pursued.   Further, the claimant has relied
> primarily on her family care doctor for treatment.   It is also
> noted the claimant has not sought emergency treatment, other
> than immediately after two other motor vehicle accidents, for
> any exacerbations of her alleged back pain since her surgery.
>
> With regard to her hernias and history of bowel obstructions, it
> is noted that the claimant has reported abdominal pain to
> treating and examining physicians.   Although the claimant's
> treating doctor noted that the claimant's abdomen was
> diffusely tender, her abdomen was noted to be non-tender to
> palpation by consultative examiner Dr. Ryan.   Additionally,
> since her alleged onset date, the only treatment the claimant
> has received for her abdominal pain has been medications
> prescribed by her family care doctor, and she has sought
> emergency room treatment for abdominal pain on only one
> occasion, in May 2010, and was hospitalized from November
> 26, 2011 to November 27, 2011 for treatment of abdominal
> pain due to mild wall thickening of the stomach and non-

obstructing right renal calculus.   (Exhibit 42F)   In August 2013, Dr. Walker prescribed Phenobarbital for IBS as her prior medication was no longer available.   (Exhibits 47F; 55 F)

The claimant testified to a heart condition.   However, during an admission in May 2012, her cardiac workup was negative. (Exhibit 43F)   There is nothing to suggest she has an [sic] cardiac conditions that further limit/reduce her RFC.

The undersigned also notes that the record indicates that the claimant has continued to smoke cigarettes despite her doctors' recommendations that she quit.   At the initial hearing, the claimant clearly stated that continues [sic] to smoke approximately 15 cigarettes per day and that all of her doctors have advised her to quit.   Impartial medical expert, Dr. Hancock, (curriculum vitae located at Exhibit 25B) testified that if the claimant would have quit smoking in 2007, she would have seen a moderate improvement in her back symptoms due to the interference with healing that smoking causes.   The undersigned finds that the claimant has been non-compliant with her doctor's recommendation to stop smoking, and that this non-compliance indicates that the claimant's pain symptoms are not as limiting as she has alleged.

With regard to her obesity, at the initial hearing, the claimant stated that her doctors have advised her to lose weight, but that she has been unable to do so because she cannot exercise.   At the supplemental hearing, however, the claimant stated that no doctor has ever advised her to lose weight. The record reflects that the claimant has actually gained weight since her alleged onset date.   At the consultative examination with Dr. Barber in March 2008, the claimant's weight was recorded at 178 pounds, and the claimant testified at the May 20 10 hearing that she weighed 232 pounds, indicating that she has gained over 50 pounds since that time. Dr. Hancock testified that the claimant's obesity probably had an injurious effect on her back, although he could not say specifically that losing weight would improve her back condition.

In assessing the claimant's credibility, the undersigned has considered the claimant's reported activities of daily living. The claimant is able to care for her own personal needs, she is able to perform at least some housework, and she is able to drive.   She is also able to visit with her friend, and she is able to spend most of her day sitting and watches television. Additionally, as noted above, the claimant reported to a

> treatment provider that she enjoyed playing darts.   The ability to perform all of these activities is not entirely consistent with a complete inability to work.
>
> For all of the above reasons, the undersigned finds the claimant's testimony and reports only partially credible.   The undersigned acknowledges, however, that the claimant's severe impairments cause some degree of functional limitation, and therefore restricts her to light level work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling.   However, the record does not support any greater or additional limitations.

(Tr. 35-36).

The ALJ also discounted Plaintiff's credibility due to inconsistencies in her

testimony:

> The claimant testified that she smokes approximately 15 cigarettes per day and that all of her doctors have advised her to quit, though at a subsequent hearing, she testified that they did not tell her to stop smoking, they just recommended it. She stated that her doctors have advised her that smoking can aggravate her back pain.   The claimant also stated that her doctors have advised her to lose weight, but that she has been unable to do so.   At the subsequent hearing, she testified that none of her treating providers suggested that she lose weight.   These inconsistencies in her testimony diminish her credibility, and the evidence clearly notes that smoking cessation was recommended.   (Exhibits 55F)   This is non-compliance with prescribed medical treatment.   The claimant testified at the recent hearing that her weight was down to 160 pounds from 235 pounds due to gastrointestinal issues.

(Tr. 31).

Plaintiff argues that the ALJ erred in his credibility determination by "equating [her]

inability to quit smoking and to lose weight with medical noncompliance and as evidence

that the claimant's pain and other symptoms were not as severe as alleged."   (Doc. 17,

p. 40).

At the May 19, 2010 hearing Plaintiff "testified that she smoked 'probably about 15'

cigarettes per day, that her doctors had *advised her* to quit, that it was not good for her to

- 19 -

smoke, that she had smoked for probably 30 years, and that her doctors told her smoking would prevent healing of her stomach."   (Doc. 17, p. 42 (emphasis in original) (citing Tr. 135-37)).   At the November 18, 2010 hearing, Dr. Hancock testified that smoking interferes with healing and that Plaintiff would have likely seen moderate improvement in her back had she quit smoking in 2007 (Tr. 110-11).   During the February 3, 2014 hearing, Plaintiff testified that she smoked about 15-16 cigarettes per day and that no doctor had "advise[d]" her or "told" her to quit smoking (Tr. 69-70).   During the September 19, 2014 hearing, Plaintiff testified that no doctor ever told her to quit smoking, "[t]hey just told [her] that it wasn't recommended."   (Tr. 57-58).   The ALJ asked Plaintiff about her testimony during the first hearing that all of her doctors advised her to quit smoking, but she denied making the statement.   The ALJ asked if the doctors recommended quitting and Plaintiff answered that they did, "but they didn't say unless you stop smoking right now, you're going to die."   (Tr. 58).

        Plaintiff cites this testimony and argues that the ALJ's reasoning for discrediting her credibility (e.g., due to inconsistencies in her multi-year testimony) is not based on substantial evidence (Doc. 17, pp 44-45).   She argues that the ALJ made no effort to refresh her testimony or provide her with any explanations or definitions for the terms (e.g., 'recommended', 'advised') that he used in questioning Plaintiff about her smoking (Id.).   However, Plaintiff has not cited any authority in support of her theory that the ALJ was required to refresh her recollection or define common terms used at the hearing. And, as pointed out by the ALJ, "the evidence clearly notes that smoking cessation was recommended."   (Tr. 31, 1751 ("It is extremely important for you to quit smoking. Please evaluate how ready you are to quit.   Creating a 'quit strategy' will help you create concrete methods to fight the urge to smoke.   There are many internet stop smoking or

smoking cessation support websites you may benefit from.   Please visit www.TobaccoFreeFlorida.com.   My office staff and I are available to assist you.   Stop smoking educational materials printed for patient.").

Notably, this is not a case where the ALJ found the claimant not disabled due to noncompliance.   See 20 C.F.R. §§ 404.1503, 416.930.   The ALJ properly considered Plaintiff's continued smoking along with other evidence in discrediting her testimony and his findings are supported by substantial evidence.   See Rodriguez v. Colvin, No. 8:12-CV-1592-T-33EAJ, 2013 WL 4495173, at *7 (M.D. Fla. Aug. 20, 2013).

The ALJ also noted inconsistencies in Plaintiff's testimony regarding her weight (Tr. 31, 36).   At the supplemental hearing Plaintiff testified that no doctor ever advised her to lose weight but at the first hearing she had testified that her doctors had told her to lose weight.   The ALJ noted that Plaintiff gained over 50 pounds between March 2008 and May 2010 (Id.).   Dr. Hancock testified that Plaintiff's "obesity probably had an injurious effect on her back, although he could not say specifically that losing weight would improve her back condition."   (Id.).   Plaintiff does not challenge this portion of the ALJ's credibility determination, which is supported by substantial evidence.   Instead, she cites her testimony at the September 2014 hearing that she still experienced severe and chronic pain after her weight dropped to 157-160 pounds (Doc. 17, pp. 45-46).   But, the ALJ noted this testimony and nevertheless found Plaintiff's testimony and complaints only partially credible (Tr. 31, 36).

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence because he erred in concluding that she only sought emergency treatment for abdominal pain on one occasion (Doc. 17, p. 40).   Plaintiff cites Exhibit 63F and argues that "she was admitted through the CFRH emergency room on September 16,

2014 for severe abdominal pain." (Id. at p. 45).   Assuming Plaintiff was correct, I would

find this to be harmless error in light of the long list of reasons the ALJ supplied for

discrediting Plaintiff's testimony.   Here, I find no error because this evidence was not

submitted until after the ALJ's decision was issued (Tr. 5).

Plaintiff challenges the ALJ's finding that she had only undergone conservative

treatment with medications (Doc. 17, p. 40).   She cites to an October 28, 2013

recommendation for a right facet injection at L4-5, a November 7, 2013 recommendation

for a therapeutic bilateral L5-S1 epidural injection, and a February 20, 2014 lumbar

provocative discography, and argues that the ALJ's credibility determination is not

supported by substantial evidence (Doc. 17, p. 52; Tr. 1740, 1770, 1807).   This

challenge corresponds to the following portion of the ALJ's credibility determination:

> Further, the claimant has been treated conservatively since
> her surgery.   Since recovering from her surgery, the only
> treatment the claimant has received has been medication
> prescribed by her family physician until her recent visit with a
> pain management physician.   No doctor has recommended
> any further treatment modalities such as injections or physical
> therapy, and her treating neurosurgeon stated that further
> surgery was not needed.   The use of a stimulator was
> mentioned but not pursued.   Further, the claimant has relied
> primarily on her family care doctor for treatment.   It is also
> noted the claimant has not sought emergency treatment, other
> than immediately after two other motor vehicle accidents, for
> any exacerbations of her alleged back pain since her surgery.

(Tr. 35).   Plaintiff's challenge is limited to the ALJ's characterization of her treatment as

conservative and his finding that "[n]o doctor has recommended any further treatment

modalities such as injections or physical therapy."

Plaintiff cites to her discography as proof that she received other treatment, but the

ALJ noted that Plaintiff "has recently treatment [sic] with Dr. Pham for pain management"

and that the discography "revealed that none of her discs were causing pain on

provocation."   The ALJ also referenced the treatment in his credibility determination (Tr. 35 ("Since recovering from her surgery, the only treatment the claimant has received has been medication prescribed by her family physician until her recent visit with a pain management physician.")).   Plaintiff challenges the ALJ's characterization that she received conservative treatment, but several medical sources referred to Plaintiff's treatment as conservative (Tr. 1419, 1443, 1801).

In addition, Plaintiff challenges the ALJ's finding that no provider recommended further treatment modalities such as injections.   The Commissioner concedes that "the ALJ incorrectly noted Plaintiff had never been recommended injections," but points out that Plaintiff received only one injection in approximately seven years since her initial back injury (Tr. 52, 1736).   I find this error harmless considering the long list of reasons the ALJ articulated in making his credibility evaluation (Tr. 52-53).   The ALJ stated and applied the proper standards and, with the exception of noting that no doctor had recommended injections, performed a thorough evaluation of plaintiff's credibility. Considering the foregoing, I find that the ALJ's error does not negate the validity of his ultimate credibility determination.   See Wilson v. Comm'r of Soc. Sec., 500 F. App'x 857, 860 (11th Cir. 2012) (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983)).

V. Recommendation

For these reasons I **RESPECTFULLY RECOMMEND** that the Commissioner's final decision be **AFFIRMED**, and that the Clerk be directed to enter judgment accordingly and **CLOSE** the file.

NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written

objections waives that party's right to challenge on appeal any unobjected-to factual

finding or legal conclusion the district judge adopts from the Report and

Recommendation.   <u>See</u> 11th Cir. R. 3-1.

      **RESPECTFULLY RECOMMENDED** in Orlando, Florida on June 14, 2016.

THOMAS B. SMITH
United States Magistrate Judge


Copies furnished to:

      Presiding United States District Judge
      Counsel of Record